2011 ND 112

**Richard D. VARRIANO, Plaintiff and Appellant**

v.

**Denise VARRIANO, Defendant and Appellee.**

No. 20100278.

Supreme Court of North Dakota.

June 21, 2011.

Richard E. Edinger (argued), Fargo, ND, for plaintiff and appellant.

Kent M. Morrow (argued), Bismarck, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Richard D. Varriano appealed an order denying his motion to terminate his child support and spousal support obligations. Richard Varriano argued the district court erred in finding his former spouse, Denise Varriano, had not cohabited and had not violated a provision in the divorce judgment awarding her spousal support unless she cohabited with a significant other or remarried. We affirm.

I

[¶ 2] Richard Varriano and Denise Varriano were divorced in 2001. A provision in the divorce judgment awarded Denise Varriano the sum of $4,000 per month, which combined the child support award and spousal support award. The child support obligation was based upon Richard Varriano's income as stipulated by the parties. The amount Richard Varriano paid over the child support obligation, and up to $4,000 per month, was to be considered spousal support. As each of the parties' four children reached the age of eighteen, the portion of the award constituting spousal support increased, and the portion of the award constituting child support decreased. Richard Varriano was obligated to pay $4,000 per month until no children were eligible for child support. After the child support obligation terminated for all the children, the spousal support obligation was set at $1,000 per month for four more years. All child support payments were to be paid to the state disbursement unit, and Richard Varriano's income was subject to income withholding by the state disbursement unit. The judgment also provided Denise Varriano would no longer be eligible to receive spousal support if she "remarries, is deceased, or cohabit[s] with a significant other."

[¶ 3] In February 2010, the clerk sent a notice of arrears for $181,781.20 against Richard Varriano for "child support and/or spousal support," with payment due to the state disbursement unit. Richard Varriano filed an "opposition to notice of arrears," claiming he did not owe any arrearage because Denise Varriano had violated the divorce judgment's spousal support provisions by cohabiting with a significant

other. An order to show cause was entered in March 2010 after Richard Varriano failed to pay the arrears. In May 2010, Richard Varriano filed a motion to terminate his child support and spousal support obligations, alleging Denise Varriano was already cohabiting with a significant other when the divorce judgment was entered. Richard Varriano argued the spousal support provision had been null and void due to Denise Varriano's cohabitation; he had therefore overpaid on his spousal support obligation, and the amount of overpayment should have offset the child support arrears.

[¶ 4] The district court held a hearing on Richard Varriano's motion on May 26, 2010. Richard Varriano appeared with his attorney, and Denise Varriano appeared without counsel. The state disbursement unit was not involved in the hearing. After receiving affidavits and hearing testimony from several witnesses on two of Denise Varriano's post-divorce relationships, the district court found Denise Varriano had not cohabited with a significant other, and Richard Varriano's support obligation was not null and void.

## II

[¶ 5] This case comes to us in an unusual posture. The notice of arrears was entered by the State for Denise Varriano on Richard Varriano's unpaid support obligations. Richard Varriano brought a "motion to terminate child support and spousal support obligation." At the hearing on the motion to terminate the support obligations, Denise Varriano appeared without counsel to argue she had not cohabited. The State through the state disbursement unit did not take part in the hearing to address the effect of Richard Varriano's motion on child support arrearages. Richard Varriano's motion requested the district court declare Denise Varriano's

spousal support award null and void because she perpetrated "a fraud on the court and [Richard Varriano]," by allegedly cohabiting with a significant other at the time the divorce judgment was entered. Richard Varriano requested relief under an independent right in equity to obtain relief from the judgment, citing *Hamilton v. Hamilton*, 410 N.W.2d 508 (N.D.1987). *See Hamilton*, at 518–19 (the remedy of an independent action in equity to obtain relief from the judgment is reserved to "those unusual and exceptional circumstances in which a party may not avail himself of the motion procedure presented in Rule 60(b), N.D.R.Civ.P . . . ."). The district court did not address whether relief under an independent action in equity to obtain relief from the judgment was appropriate.

[¶ 6] Richard Varriano's motion to terminate his support obligations is, in effect, a motion to retroactively reduce or eliminate his support obligations. *See Marchus v. Marchus*, 2006 ND 81, ¶¶ 8–9, 712 N.W.2d 636. When he made his motion, Richard Varriano did not have a current child support obligation. The district court did not address the timeliness of Richard Varriano's motion to reduce his support obligations based upon conduct that occurred in 2001 when the pertinent facts were operative, nor did the court address whether the relief Richard Varriano requested was appropriate. The district court did not address whether arrears may be negated upon a motion to modify a support obligation. Because the court found Denise Varriano had not cohabited, and because these issues were never addressed below, we do not address whether Richard Varriano's motion was untimely, or whether the requested relief was appropriate.

## III

[¶ 7] Richard Varriano argued the district court erred in finding Denise Var-

riano had not cohabited with a significant other. Richard Varriano presented evidence on two of Denise Varriano's post-divorce relationships in the district court, but on appeal argued the court erred in its findings on her first relationship with Jim VanErem only.

[¶ 8] Whether Denise Varriano's post-divorce relationship with VanErem included cohabitation with a significant other is a finding of fact which will not be set aside on appeal unless clearly erroneous. *See Baker v. Baker*, 1997 ND 135, ¶¶ 15, 19, 566 N.W.2d 806. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Nuveen v. Nuveen*, 2011 ND 44, ¶ 3, 795 N.W.2d 308 (quoting *Duff v. Kearns–Duff*, 2010 ND 247, ¶ 13, 792 N.W.2d 916).

[¶ 9] In *Baker*, this Court stated the relevant factors to determine whether two people are cohabiting, or living together as husband and wife without being married, are 1) establishment of a common residence; 2) long-term sexual, intimate, or romantic involvement; 3) shared assets or common bank accounts; 4) joint contribution to household expenses; and 5) a recognition of the relationship by the community. 1997 ND 135, ¶ 14, 566 N.W.2d 806. We recognized "these factors are non-exclusive, and no one factor is an absolute prerequisite for a finding of cohabitation." *Id.* This Court upheld the district court's finding of cohabitation in *Baker* because the appellant and his girlfriend shared a common residence, and the girlfriend stayed at the appellant's home in Bismarck three-fourths of the time. *Id.* at ¶ 16. The girlfriend had a key to the appellant's home for two years and stayed there even when he was not home. *Id.* The girlfriend

prepared meals, kept some of her clothing at the common residence, and did laundry there. *Id.* The appellant occasionally stayed overnight at the girlfriend's home, they visited her lake cabin together, and they went on vacation together. *Id.* They both contributed to household expenses. *Id.* Their relationship was sexual and relatively long-term, lasting at least 15 months before the trial court's decision. *Id.* There was recognition of the relationship in the community. *Id.* at ¶ 17. The appellant and his girlfriend celebrated holidays together, visited their families and friends together, and attended social events together. *Id.* There was no evidence of shared bank accounts or commingling of funds, but that was only one of the factors the court considered, and the trial court found their testimony about the lack of commingled funds "impossible to believe." *Id.* at ¶ 18.

[¶ 10] In the present case, the district court compared its findings to *Baker*:

The case at bar is distinguishable from the facts in *Baker*. Here, [Denise Varriano] has had more than one residence since the parties' divorce. She has maintained that separate residence and admittedly spent significant amounts of time with men she's been dating. . . . There is evidence regarding a boyfriend immediately following the divorce having a home in which [Denise Varriano] spent a considerable amount of time and even had her children spending considerable time there. [Denise Varriano] admitted that in this relationship marriage was discussed but never materialized. There's no evidence that [Denise Varriano] ever received mail at her boyfriend's residence, or contributed toward any household expenses whatsoever. Further, [Denise Varriano's] initial relationship after the parties' divorce was relatively short term.

In the end this initial relationship does not rise to the level of the relationship described by the trial court in *Baker* stating that "[the only things lacking are a change in name, a marriage license, and a wedding.]"

[¶ 11] The district court's findings indicate it relied on Denise Varriano's testimony of her relationship with VanErem to find she had not cohabited with VanErem. The court found "she always maintained her own residence, paid her own bills, and spent time at her own residence." The court found there was no credible evidence that Denise Varriano shared assets, bank accounts, or household expenses with VanErem or any other alleged cohabitant. The court found Denise Varriano had spent two, three, or four nights a week at a boyfriend's house at various times since her divorce. Denise Varriano stated she would keep a change of clothes at VanErem's house because she would go to work directly from his residence when she stayed there. The court stated it was "left with the impression that [Denise Varriano], although she spent a great deal of time at her boyfriend's residence immediately following the divorce for a short time, never intended that to be a relationship of cohabitation. . . ."

[¶ 12] The district court did not rely on Richard Varriano's evidence, which included testimony from the parties' four children. The parties' children testified that Denise Varriano had cohabited with VanErem. The court noted one daughter testified she had previously been "neutral" between the parties, but suggested she was now on her father's side. The court found "this very difficult family dynamic has [led] to the adult children of the [Varrianos] to choose sides, and on this issue side with their father in an effort to protect him financially." The court found the testimony of all the parties' children indi-cated they were angry with Denise Varriano. The court questioned why Richard Varriano had not known of the relationship if it had risen to the level of cohabitation as the children testified, and the court did "not find credible the testimony put forth regarding why Mr. Varriano only recently learned of the alleged cohabitation."

[¶ 13] The district court order denying Richard Varriano's motion and finding Denise Varriano's relationship with VanErem did not rise to the level of cohabitation with a significant other was not clearly erroneous. The court applied the *Baker* factors and found there was no evidence of shared assets or shared bank accounts, there was no credible evidence of joint contribution to household expenses, and the relationship was not long-term. There was conflicting testimony, but according to Richard Varriano's allegations and Denise Varriano's testimony, Denise's relationship with VanErem began sometime around the parties' divorce in 2001. Denise Varriano testified her relationship with VanErem lasted until the end of 2001, and she began dating another individual in 2002. The court noted that Richard Varriano only recently became aware of the details of the relationship he was relying upon for his motion to terminate the support obligations. This hardly evidences a recognition of the relationship in the community. Finally, the court's findings suggest Denise Varriano may have established a common residence with VanErem, but this is only one factor to consider. The district court's findings were not induced by an erroneous view of the law, there is testimony and evidence by Denise Varriano on the record to support the court's findings, and we are not left with a definite and firm conviction a mistake has been made.

### IV

[¶ 14] We affirm the district court order denying Richard Varriano's motion to

terminate his child support and spousal support obligations.

[¶ 15] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.